# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES D. SILSBY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 16-CV-098-JHP-JFJ |
| | ) |
| CASEY HAMILTON, Warden,[1] | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is Petitioner Charles Silsby's habeas corpus petition under 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his Pawnee County District Court conviction for second degree murder, Case No. CF-2012-0134. Dkt. 1, Petition, at 1. He argues the State violated his *Miranda* rights by admitting incriminating statements made at the scene. Dkt. 1, Petition, at 4. He asks the Court to vacate his 15-year sentence and remand the case for a new trial. *Id.* at 7. Respondent contends the investigating officers properly advised Petitioner of his *Miranda* rights earlier in the day. For the reasons below, the Court will deny the petition.

## I. Background

Petitioner's conviction stems from a shooting incident in 2012. Dkt. 11-8, Information in O.R., at 9. On July 11, 2012 at 9:00 a.m., Pawnee Sheriff Deputy Moore responded to an emergency call at Petitioner's residence. Dkt. 11-4, Tr. Trial vol. II, at 56. As he arrived, an ambulance transported Petitioner's wife, Ms. Champion, to the hospital. *Id.* at 56-57. Deputy

---

[1] Petitioner is incarcerated at Northeast Oklahoma Correctional Center (NOCC) in Sayre, Oklahoma. Dkt. 13 at 1. Casey Hamilton, the warden of NOCC, is therefore substituted in place of Tracy McCollum as party respondent. *See* Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

Moore encountered Petitioner and issued a *Miranda* warning. *Id.* at 68. Petitioner stated he understood and that he wished to talk with him. *Id.* at 68-69. Petitioner reported that after an argument, he found Ms. Champion sitting at a computer with a gun tucked in beside her. *Id.* at 71-73. He stated he tried to take the gun so that Ms. Champion could not hurt herself, but it accidentally discharged in her hand during the struggle. *Id.* at 73. Deputy Moore had to leave briefly to access a cellular signal and report to his boss. *Id.* at 84. Petitioner and his son left the residence to drive to the hospital, but Deputy Moore called Petitioner and instructed him to return home. *Id.* at 87. At the residence, Deputy Moore detained Petitioner for some period. Dkt. 11-4, Tr. Prelim. Hr. (October 25, 2012) vol. I, at 17.

Several hours later, Pawnee Sheriff Agent Brown arrived at the residence. Dkt. 11-4, Tr. Trial vol. II, at 56-57. At about 2:00 p.m., he asked Petitioner to enter his car and talk with him about what happened. *Id.* at 99-104. Agent Brown stated Petitioner was not under arrest. *Id.* at 104. Petitioner initially repeated his original story, stating that the gun discharged in his wife's hand during the struggle. *Id.* at 106. After Agent Brown asked Petitioner if he would take a gunshot residue test, Petitioner stated he "might have got [the gun]." *Id.* at 107-108. Petitioner then told Agent Brown: "arrest me. I killed her. I murdered her." *Id.* at 108. Petitioner also disclosed that he obtained control of the gun during the struggle, pointed the barrel against his wife's head, and repeatedly asked: "is this what you want." *Id.* at 111. Agent Brown stopped the interview, read Petitioner his *Miranda* rights, and transported Petitioner to the Pawnee County Sheriff's office. Dkt. 11-4, Tr. Prelim. Hr. (October 25, 2012) vol. I, at 35-36; *see also* Dkt. 10-1, App. Brief, at 10. Petitioner recounted a similar story at the station house, although it does not appear he referred to murdering Ms. Champion. Dkt. 11-4, Tr. Trial vol. II, at 113.

Ms. Champion died as a result of the shooting. Dkt. 10-1, App. Brief, at 10-11. The State charged Petitioner with second degree murder in violation of OKLA. STAT. tit. 21, § 701.8. Dkt. 11-8, Second Amended Information in O.R., at 77. His theory of defense was that Ms. Champion was suicidal and that she took her own life. Dkt. 10-1, App. Brief, at 10. Defense counsel sought to suppress Petitioner's statements made in Agent Brown's vehicle and requested a pretrial hearing on the voluntariness of his statements to police, consistent with *Jackson v. Denno,* 378 U.S. 386 1964). Dkt. 11-3, Tr. Trial vol. I, at 5-9. The State Court denied the motion, finding Petitioner's statements were voluntary and that he either made them in a non-custodial setting, or received an earlier *Miranda* warning. *Id.* at 9. On October 2, 2013, a jury convicted Petitioner of second degree murder and recommended a punishment of 15 years imprisonment, plus a $10,000 fine. Dkt. 11-5, Tr. Trial vol. III, at 105. The State Court sentenced Petitioner accordingly. Dkt. 11-7, Tr. Sent. Hr'g (December 20, 2013), at 21.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). Dkt. 10-1, App. Brief, at 1. Petitioner's appellate counsel raised one proposition of error, arguing the state court erred in admitting Petitioner's statements to Agent Brown. *Id.* at 2. By a Summary Opinion entered February 19, 2015, the OCCA affirmed Petitioner's conviction. Dkt. 10-3, *State v. Petitioner*, No. CF-2013-1201 (Okla. Crim. App. 2015) (unpublished), at 1.

Petitioner filed the instant § 2254 Petition (Dkt. 1) on February 18, 2016. He identifies the same ground for relief as on appeal. Dkt. 1, Petition, at 4. Specifically, he contends Agent Brown solicited statements in a custodial setting (the police cruiser) without advising Petitioner of his *Miranda* rights. *Id.* at 4-5. The Petition reflects he exhausted his claim through a direct appeal, and notes the OCCA ruling contradicted its prior case law. *Id.* at 5.

On April 6, 2016, Respondent filed a Response (Dkt. 9) along with copies of the state court record (Dkt. 10, 11). Respondent concedes, and the Court finds, that Petitioner timely filed his federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). Respondent also concedes Petitioner exhausted his *Miranda* claim, but argues he did not exhaust any argument regarding a deviation from OCCA precedent. Dkt. 10, Response, at 2; *see also* 28 U.S.C. § 2254(b)(1)(A). Having reviewed the Petition as a whole, it does not appear Petitioner intended to raise a separate claim regarding the OCCA precedent. Dkt. 1, Petition, at 1-10. In any event, the Court will excuse any procedural defects and address Petitioner's arguments on the merits. *See Harris v. Champion,* 938 F.2d 1062, 1069 (10th Cir. 1991) (noting "the federal court may, of course, in a habeas action excuse the exhaustion requirement of § 2254 and proceed to hear those claims on their merits").

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that . . . involved

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

5

disagreement." *Richter*, 562 U.S. at 103.

### A. *Miranda* Violations

Petitioner contends the State Court violated his Fifth and Fourteenth Amendment rights by admitting his statements to Agent Brown. Dkt. 1, Petition, at 1-10. He argues the statements are inadmissible because Agent Brown conducted a custodial interrogation in the police cruiser without first issuing a *Miranda* warning. Dkt. 10-1, App. Brief, at 14-18. He also contends the earlier *Miranda* warning issued by Deputy Moore was insufficient to cover Agent Brown's questioning. *Id.* at 18-24.

The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. The Supreme Court has interpreted this to mean the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). Statements made during a custodial interrogation are not admissible unless the defendant was "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.* The rule stems from the concern that the "the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated." *United States v. Patane*, 542 U.S. 630, 639 (2004).

The OCCA considered *Miranda* and concluded "the trial court did not err in finding that all of [Petitioner's] statements to police were voluntary and admissible at trial." Dkt. 10-3, OCCA

Op., at 2. The OCCA reasoned the statements were not "'coerced,' in violation of the Fifth Amendment, merely because they were not immediately preceded by a full reiteration of the *Miranda* warning that [Petitioner] had received earlier that day." *Id.* Having carefully reviewed the record, the Court finds the OCCA's ruling was objectively reasonable. *See White*, 134 S. Ct. at 1702 (habeas relief is only available where the state court's application of Supreme Court law is "objectively unreasonable").

First, the record contains no clear and convincing evidence to controvert the finding that Petitioner was not in custody when he entered Agent Brown's police cruiser. *See* 28 U.S.C. § 2254(e)(1). An interrogation is custodial if it includes "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 445. The custody requirement is satisfied only when a suspect's "freedom of action is curtailed to the degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Courts consider: (1) "the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will;" (2) the nature of the questioning, including whether prolonged accusatory questioning created a coercive environment; and (3) whether the law-enforcement agents dominated the encounter. *United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008).

Here, Agent Brown testified that he asked Petitioner to sit in his vehicle and "talk about what happened." Dkt. 11-4, Tr. Trial vol. II, at 101, 104. Although Deputy Moore had previously directed Petitioner to return home and "stay with him," Agent Brown informed Petitioner that he "wasn't under arrest." *Id.* at 104. Agent Brown stated he "just needed to find out what happened." *Id.* at 104. Petitioner was emotional and began describing the events before and after the shooting.

7

*Id.* at 104-106. The record reflects Agent Brown asked a few, brief follow up questions such as "why did you do that," or whether he could test Petitioner's hands for gunshot residue. *Id.* at 105-108. At that point Petitioner admitted that he "might have got [the gun]." *Id.* at 108. When Agent Brown told him to think about whether he obtained the gun, Petitioner closed his eyes and stated: "arrest me. I killed her, I murdered her." *Id.* at 108. Having considered this record in light of the *Jones* factors, the Court cannot disturb the OCCA's ruling that Petitioner was not in custody.

Further, even if the encounter qualified as a custodial interrogation, the OCCA found, and the Court agrees, that Petitioner received a sufficient *Miranda* warning earlier in the day. "The mere passage of time ... does not compromise a *Miranda* warning. Courts have consistently upheld the integrity of *Miranda* warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation." *Mitchell v. Gibson*, 262 F.3d 1036, 1057–58 (10th Cir. 2001) (quotations omitted). An earlier *Miranda* warning is sufficient to cover a subsequent interrogation "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.* at 1058 (quoting *Wyrick v. Fields*, 459 U.S. 42, 47 (1982) (per curiam)). Relevant factors include "whether the character of the interrogation had changed significantly, and whether the questions put to the defendant subsequently would have caused him to forget the rights of which he had been advised and which he had previously understood." *Id.*

The circumstances here do not suggest Petitioner would have forgotten the earlier *Miranda* warnings. Petitioner was advised of his rights about four or five hours before he spoke to Agent Brown. Dkt. 11-4 Tr. Trial vol. II, at 68; 100-101. Petitioner remained at the scene, except for a few minutes, and was aware that police continued to investigate the shooting. *Id.* at 68-69; 73-74;

8

86. The nature of the questioning was the same in the morning and the afternoon, and focused on the circumstances surrounding the shooting. *Id.* at 68-73; 101-108. Under these facts, the Court cannot find the OCCA unreasonably applied federal law, and Petitioner's *Miranda* claim fails.

### B. Deviation from Prior Precedent

In the "supporting facts" section under Ground I (*Miranda* violations), Petitioner notes in passing that the OCCA's ruling contradicted its prior precedent. Dkt. 1, Petition, at 5. As discussed above, it does not appear that this constitutes a separate ground for relief. However, to the extent Petitioner intended to separately pursue the argument, habeas relief is unavailable. Petitioner's own appellate brief indicates the OCCA has repeatedly declined to suppress incriminating statements made several hours after the *Miranda* warnings. Dkt. 10-1, App. Brief, at 19-30; *see also Rowe v. State,* 779 P.2d 594 (Okla. Crim. App. 1989); *Hammer v. State*, 760 P.2d 200, 202-203 (Okla. Crim. App. 1988). Although Petitioner's appellate counsel attempted to distinguish these cases, it is clear the OCCA's decision was consistent with existing precedent. *Id.* Further, and importantly, nothing prevents a high court from departing from, or expanding upon, existing precedent. The Court therefore denies relief based on any alleged inconsistencies in the OCCA's jurisprudence.

Based on the foregoing, the Court concludes Petitioner's conviction does not violate federal law. *See* 28 U.S.C. § 2254(a). The Petition must therefore be denied.

## III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 1) is **denied**.
3. A certificate of appealability is **denied**.
4. A separate judgment will be entered herewith.

ORDERED this 6th day of February, 2019.

James H. Payne
United States District Judge
Northern District of Oklahoma